**SCHIFFMAN LAW OFFICE**, P.C.
HELPING THE INJURED AND DISABLED SINCE 1975

Lisa Counters, 016436
4506 N 12th Street
Phoenix, AZ 85014-4246
Voice: (602) 563-8007
Fax: (602) 266-0141
Lisa@SchiffmanLaw.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jeff M. Bartlett and Shelley R. Bartlett, husband and wife,<br><br>                                        Plaintiffs,<br><br>vs.<br><br>The TRAX International Corp. Health and Welfare Plan, TRAX International Corp., as Plan Administrator, and Cigna Health & Life Insurance Company, a foreign insurer,<br><br>                                        Defendant. | No.<br><br>**COMPLAINT** |

This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 ("ERISA"). It involves a claim by Plaintiffs for employee benefits under an employee benefit plan regulated and governed under ERISA. For their Complaint, Plaintiffs Jeff M. Bartlett and Shelley R. Bartlett (the Bartletts) allege as follows:

**PRELIMINARY ALLEGATIONS**

1.      Jeff Bartlett and Shelley Bartlett are married and were, at all relevant times, residents of the city of Yuma, Yuma County, Arizona.

2.      Jeff works for Defendant TRAX International Corporation ("TRAX"), a foreign corporation.

3. The Bartletts participate in the TRAX International Corporation Health & Welfare Plan ("Plan"), an employee welfare benefit plan regulated by ERISA under which Plaintiffs are entitled to health care benefits.

4. Shelley R. Bartlett is a covered dependent under the Plan.

5. This Court has jurisdiction under 28 U.S.C. § 1331, as this action involves a federal question.

6. Venue is proper in this judicial district under 29 U.S.C. § 1132(e)(2). The insurance claims that form the basis of this lawsuit were administered in this judicial district.

7. Defendant TRAX International is the Plan Administrator and a Plan Fiduciary, as ERISA defines those terms. 29 U.S.C. § 1102(a)(2) (fiduciary) and 29 U.S.C. § 1002(A)(16) administrator.

8. Defendant Cigna Health & Life Insurance Company ("Cigna") has its principal place of business in Tennessee, is authorized to transact and transact business in the District of Arizona and can be found in the District of Arizona.

9. The Plan purports to have a delegation of discretionary authority. However, the Plan documents in the Bartletts' possession do not evidence the transfer of discretion from TRAX to Cigna.

10. TRAX's health benefits are self-funded through employee and corporation contributions.

11. ERISA defines those terms, Cigna is the Claim Administrator and a Plan Fiduciary.

12. Cigna and TRAX have agreed for Cigna to provide administrative services.

13. On information and belief, the terms of the administrative services agreement between Cigna and TRAX creates an impermissible conflict of interest that would require the court to view the decisions with increased skepticism.

14. On information and belief, the "Group Insurance Policy" serves as both the summary plan description and the Plan's written instrument under 29 U.S.C. § 1102(a)(1).

## FACTS COMMON TO ALL CLAIMS

15. On September 21, 2020, the Bartletts visited the Apache Sitgreaves National Forest.

16. Shelley fell in the forest. Her leg swelled quickly, and she was in extreme pain. Although Jeff tried to move her 150 feet to their truck, he could not. He called for help, and the Alpine Fire Department arrived 45 minutes later.

17. Shelley had to be extricated from the forest by ATV to be transported to the ambulance that took her to the hospital.

18. Shelley arrived by ambulance at the White Mountain Regional Medical Center on September 21, 2020, at 10:21 p.m.

19. The x-rays revealed an acute oblique fracture of the distal tibial and fibular shafts with an acute transverse non-displaced fracture of the medial malleolus.

20. The treating Physician's Assistant, David Hall, contacted the on-call orthopedic surgeon, Dr. Ian Brimhall, of Show Low, Arizona.

21. Dr. Brimhall indicated that he could not adequately repair the fractures and treat Shelley's injuries and recommended that she be transferred to a trauma center in Phoenix or Tucson.

22. At 11:15 p.m., PA Hall contacted the HonorHealth Scottsdale Osborn Trauma Center ("Osborn") regarding Shelley's care.

23. Dr. Jeremy Driscoll, an Emergency Room physician at Osborn, consulted with PA Hall and agreed to accept Shelley as a patient.

24. Shelley was transferred to Osborn by a fixed-wing air ambulance operated by Guardian Flight LLC on September 22, 2020, according to the recommendations of her treating and consulting physicians.

25. On November 11, 2020, Guardian Flight, LLC filed a claim for Shelley's trip for $57,637.90 with Cigna.

26. On February 4, 2021, Cigna made an untimely decision to deny the claim.

27. The Explanation of Benefits provided to the Bartletts showed that Cigna paid $49.10 for the ground ambulance. It denied the remainder of the claim, citing code "A1," explained as "Based on the documentation currently on file, these services or supplies appear not to be medically necessary. Your plan provides coverage only for medically necessary services and supplies."

28. Guardian Flight, LLC filed a provider appeal of the denial on April 12, 2021.

29. On May 12, 2021, a board-certified pediatrician denied the appeal. Cigna cited its Medical Coverage Policy – 0555 Ambulance Services as the guideline relied upon to deny the claim.

30. The Bartletts were never provided with a copy of this guideline.

31. On September 21, 2021, the Bartletts filed their first appeal of Cigna's denial.

32. Rather than treating the Bartletts' appeal as their initial appeal, Cigna considered their appeal the second one and advised the Bartletts that the next level of appeal was external review.

33. Cigna then had the Bartletts complete a "Request for IRO (Independent Review Organization)."

34. On September 9, 2021, Jeff Bartlett prepared a letter to accompany the IRO Appeal.

35. Cigna submitted the Bartletts' appeal on September 17, 2021, to the MLS Group of Companies, LLC ("MLS"). MLS denied the appeal on October 25, 2021. MLS concluded that the air ambulance services were not medically necessary.

36. The Plan covers medically necessary ambulance services "to or from the nearest Hospital where the needed medical care and treatment can be provided."

37. The Plan defines Medical Necessity as:

> **Medically Necessary/Medical Necessity**
>
> Health care services, supplies and medications provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, condition, disease or its symptoms, that are all of the following as determined by a Medical Director or Review Organization:
>
> - required to diagnose or treat an illness, Injury, disease or its symptoms;
> - in accordance with generally accepted standards of medical practice;
> - clinically appropriate in terms of type, frequency, extent, site and duration;
> - not primarily for the convenience of the patient, Physician or other health care provider;
> - not more costly than an alternative service(s), medication(s) or supply(ies) that is at least as likely to produce equivalent therapeutic or diagnostic results with the same safety profile as to the prevention, evaluation, diagnosis or treatment of your Sickness, Injury, condition, disease or its symptoms; and
> - rendered in the least intensive setting that is appropriate for the delivery of the services, supplies or medications. Where applicable, the Medical Director or Review Organization may compare the cost-effectiveness of alternative services, supplies, medications or settings when determining least intensive setting.

38. The Plan does not require Prior Authorization or Pre Certification for ambulance services.

39. The Plan's initial response to Guardian's appeal was not an appeal filed under the terms of the Plan. The Bartletts never received a copy of the appeal filed by Guardian or the letter referred to in Cigna's May 12, 2021 denial of benefits.

40. The sole criteria relied on by the pediatrician was that "records do not show that transport was to the nearest available provider or facility."

41. The denial letter also relies on language about fixed-wing air transport not contained in the terms of the Plan or any document available to the Bartletts.

42. Shelley was initially taken to White Mountain Medical Center, which could not treat her injuries. White Mountain contacted Dr. Brimhall in Show Low, who, after reviewing the x-rays, refused to perform the surgery.

43. Dr. Brimhall advised that Shelley needed to be treated in Phoenix or Tucson.

44. The unidentified external reviewer's October 25, 2021, decision was erroneous and not supported by substantial evidence.

45. The external reviewer made assumptions without complete evidence.

46. The external reviewer commented on Shelley's fracture without seeing the x-rays and concluded that it was a "relatively straightforward fracture pattern" that could have been completed by any "residency-trained" orthopedic surgeon.

47. The external reviewer judged Dr. Brimhall's credibility because Dr. Brimhall's conclusion that the fracture was too complex did not "ring true."

48. The external reviewer also concluded on his assumption that Dr. Brimhall had "non-medical reasons for refusing to accept this patient for treatment."

49. The only orthopedic surgeon was more than 50 miles away, and he *refused* to perform the surgery.

50. The external reviewer relies on numerous unsupported facts regarding the availability of ground ambulance services to Osborn Health.

51. The external reviewer relied on information not contained in the record.

52. The external reviewer improperly commented on Guardian's charge when he knew or should have known that the Arizona Department of Transportation requires fixed-wing air ambulance companies to post their rates and charge their posted rates.

53. The external reviewer improperly relied on after-acquired evidence to determine whether the transport was medically necessary when the decision was made.

54. The Bartletts exhausted their administrative remedies.

# COUNT I

## FAILURE TO PAY BENEFITS UNDER 29 U.S.C. § 1132(a)(1)

### (The Plan, Plan Administrator, and Cigna)

55. All previous allegations are incorporated into this count.

56. Defendants' denial of the Bartletts' claim for benefits is unreasonable, unsupported by substantial evidence, and an abuse of discretion.

57. The Bartletts were not permitted to review and comment on the evidence obtained on appeal in violation of the 2018 Regulations (29 C.F.R. § 2560.503-1)

58. Even if the Plan contains a delegation of discretion, Defendants engaged in flagrant procedural violations of ERISA, entitling the Bartletts to *de novo* review.

59. Defendants failed to give the Bartletts a full and fair review as required by ERISA.

60. Defendants' denials did not result from a deliberate, principled reasoning process.

61. Defendants' denials did not contain sound reasoning and were not a fair and searching process.

62. Defendants' denials were made by applying terms and conditions outside the terms and conditions of the language of the Plan.

63. As a proximate result of the denial of medical benefits, the Bartletts have been damaged in the amount of the medical bills incurred.

64. Due to Defendants' failure to pay benefits, the Bartletts have been subject to harassment by collection agencies.

# COUNT II

## BREACH OF FIDUCIARY DUTY

65. All previous allegations are incorporated into this count.

66. In processing the Bartlett's claim for benefits, Defendants violated their fiduciary duties of loyalty. They failed to act with the degree of care, skill, and prudence required by 29 U.S.C. 404(a)(1)(a).

67. As a direct and proximate result of Defendants' breach of fiduciary duty, The Bartletts are entitled to enjoin any act or practice that violates ERISA. 29 U.S.C. §1132(a)(3).

68. As a direct and proximate result of Defendants' breach of fiduciary duty, The Bartletts are entitled to appropriate equitable relief to redress Defendants' breach of their fiduciary duties.

69. Restitution of all past benefits due to Plaintiffs, plus prejudgment and post-judgment interest at the lawful rate; and

70. Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiffs under the Plan.

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1. Payment of health benefits due to Plaintiffs under the Plan;

2. Under 29 U.S.C. § 1132(g), payment of all costs and attorney's fees incurred in pursuing this action;

3. Restitution or any other equitable relief the Court deems appropriate for Defendants' breach of fiduciary duties.

4. Payment of prejudgment interest and post-judgment interest of 10% under A.R.S. § 20-442 or the highest rate allowable by law;

5. Restitution of all past benefits due to Plaintiffs, plus prejudgment and post-judgment interest at the lawful rate and

6. For such other and further relief as the Court deems proper.

Dated this 26th day of September 2023.

                              SCHIFFMAN LAW OFFICE, P.C.

                              *Lisa J. Counters*
                              By: /s/ Lisa J. Counters